**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | | |
|---|---|---|
| Fleetwood Transportation Corporation and Transportation Consultants, Inc., | ) ) ) ) | Civil Action No. 6:10-01219-JMC |
| Plaintiffs, | ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| Packaging Corporation of America, | ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiffs, Fleetwood Transportation Corporation ("Fleetwood") and Transportation Consultants, Inc. ("TCI") (collectively "Plaintiffs"), filed this action against Defendant Packaging Corporation of America ("Defendant"), alleging state law claims for breach of contract, unjust enrichment, civil conspiracy, and breach of the duty of good faith and fair dealing. (ECF No. 61.) This matter is before the court on Defendant's motion to compel arbitration and to dismiss or stay the case. (ECF No. 67.) In the alternative, Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 70.) Plaintiffs oppose Defendant's motions in their entirety and further move the court to allow oral argument on the pending motions. (ECF Nos. 74, 82, & 90.) For the reasons set forth below, the court **DENIES** Plaintiff's motion for oral argument, **GRANTS** Defendant's motion to compel arbitration, and **DISMISSES** the case without prejudice.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1995, Fleetwood was retained by Defendant's predecessor, Tenneco Packaging, Inc. ("TPI"), to provide contract carrier services for TPI's corrugated packaging

materials facilities in South Carolina. (ECF No. 67-2, p. 3 at 32:24-33:2.) Fleetwood and TPI initially conducted business pursuant to an "Agreement for Contract Carriers Trucking Service," which contract was executed on November 15, 1995 (the "1995 Agreement"). (See ECF No. 67-3.) The 1995 Agreement contained a provision requiring the arbitration of all disputes arising under that Agreement. (ECF No. 67-3, ¶15.)

In 1997, the relationship between TPI and Fleetwood expanded such that the companies agreed that Fleetwood should service all of TPI's facilities in the southeast. (ECF 67-2, pp. 3-4 at 33:3-34:20.) As such, on June 9, 1997, Fleetwood and TPI entered into a new "Agreement for Contract Carriers Trucking Service" (the "1997 Agreement"), which contract expressly replaced the 1995 Agreement. (ECF 67-2, p. 4 at 36:3-11; ECF No. 67-4, ¶ 14.) The 1997 Agreement contained a provision requiring the arbitration of all disputes arising under that Agreement. (ECF No. 67-4, ¶15.)

In 1999, the corrugated packaging portion of TPI's business was sold to Madison Dearborn Partners, Inc., which adopted Defendant's name for the business it acquired. (ECF No. 74-1, p. 5 at 16:2-25.) Defendant's formation was governed by a "Contribution Agreement" dated January 25, 1999, between TPI, PCA Holdings LLC, and Defendant. (See ECF No. 67-5.) The Contribution Agreement provided that TPI "shall contribute, convey, transfer, assign and deliver to Newco,[1] and Newco shall accept and acquire from TPI, all right, title and interest of TPI in and to the Contributed Assets . . . ." (ECF No. 67-5, pp. 6-7 at ¶ 2.2(c)(i).) The term "Contributed Assets" was defined to include those contracts of TPI listed at Schedule 3.14 to the Contribution Agreement. (ECF No. 67-5, p. 5.) Schedule 3.14 specifically included the "Agreement for Contract Carriers Trucking Service dated as of June 9, 1997 by and between

---

[1] In the Contribution Agreement, Defendant is referred to as "Newco." (ECF No. 67-5, p. 3.)

Tenneco Packaging Inc. and Fleetwood Transportation Corporation," which is the full title of the 1997 Agreement. (ECF No. 67-5, p. 11 at ¶ 124.) Thereafter, on April 12, 1999, TPI, PCA Holdings LLC, and Defendant executed a Bill of Sale, Assignment and Assumption Agreement (the "Bill of Sale"). (See ECF No. 67-6.) Pursuant to the Bill of Sale, all Contributed Assets, including the 1997 Agreement, were assigned and delivered to Defendant. (ECF No. 67-6, p. 2.)

After Defendant's creation, the parties agree they had a business relationship, but are unable to agree on exactly what contractual documentation that relationship was based on. In this regard, Defendant contends that Fleetwood hauled corrugated materials for Defendant pursuant to the terms of the 1997 Agreement until 2007. Additionally, Defendant asserts that it and Fleetwood executed additional rate sheets in the same form as the rate sheets that were attached to the 1997 Agreement as "Schedule A" to allow for periodic adjustment in prices. (ECF No. 67-2, p. 5 at 38:3-41:2; ECF No. 67-8.) Defendant argues these rate sheets were not designed to replace the comprehensive 1997 Agreement, but to supplement 1997 Agreement and replace earlier issued rate sheets. (ECF No. 67-1, p. 4.)

Plaintiffs, on the other hand, contend that after the sale of TPI and the formation of Defendant, Fleetwood and Defendant "operated under written rate agreements, which were reviewed annually and modified periodically by revised written rate agreements." (ECF No. 61, ¶ 13; ECF No. 74-2.) Plaintiffs further contend that Defendant was not a party to the 1997 Agreement and the numerous rate sheets that were executed between 2000 and 2007 were not addendums to the 1997 Agreement, but were separate, stand-alone contracts between Defendant and Fleetwood. (ECF No. 24, pp. 3-6.)

On May 14, 2007, Defendant provided thirty day written notice to Fleetwood that it was terminating their business relationship effective June 15, 2007. (ECF No. 67-9, p. 2.) After the

3

termination of Fleetwood's business relationship with Defendant, Plaintiffs, on April 7, 2010, filed a summons and complaint against Defendant in the Court of Common Pleas of Greenville County, South Carolina alleging breach of contract, unjust enrichment, civil conspiracy, and breach of the duty of good faith and fair dealing. (ECF No. 1-1.) On May 12, 2010, Defendant removed the case to the United States District Court for the District of South Carolina and filed its answer on May 13, 2010. (ECF Nos. 1 & 5.)

On November 9, 2010, Defendant filed a motion to compel arbitration and to dismiss or stay the matter. (ECF No. 18.) On November 24, 2010, Plaintiffs moved for leave to amend their complaint. (ECF No. 21.) Plaintiff filed opposition to Defendant's motion to compel arbitration on November 29, 2010. (ECF Nos. 24.) On April 27, 2011, Defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 51.) On May 10, 2011, the court granted Plaintiffs' motion for leave to amend the complaint and dismissed without prejudice Defendant's motions to compel arbitration, to dismiss or stay the matter, and for summary judgment. (ECF No. 58.) Plaintiffs subsequently filed an amended complaint on May 19, 2011. (ECF No. 61.)

After filing its answer to the amended complaint on May 27, 2011, Defendant filed a second motion to compel arbitration and to dismiss or stay the matter on June 17, 2011. (ECF Nos. 64 & 67.) Thereafter, on June 30, 2011, Defendant filed a second motion for summary judgment. (ECF No. 70.) Plaintiff filed opposition to Defendant's motion to compel arbitration on July 20, 2011 and its motion for summary judgment on August 18, 2011. (ECF Nos. 74 & 82.) Defendant filed a reply in support of the motion to compel arbitration on August 1, 2011 and the motion for summary judgment on September 8, 2011. (ECF Nos. 77 & 89.) Additionally, Plaintiffs moved the court to set a hearing and entertain oral argument on

4

Defendant's pending motions.  (ECF No. 90.)

## II.    LEGAL STANDARD AND ANALYSIS

**A.    Plaintiff's Motion for Oral Argument**

Plaintiffs have moved the court to allow oral argument on Defendant's motions to compel arbitration, to dismiss or stay the matter, and for summary judgment.  Pursuant to the local rules of this court, the judge has discretion to order hearings on motions and motions may be adjudicated without a hearing.  Local Rule 7.08 D.S.C.  In this matter, the court finds that the pending motions have been briefed extensively and oral argument will not aid the decisional process.

**B.    Defendant's Motion to Compel Arbitration and to Dismiss or Stay the Matter**

1.    Standard for Arbitration under the FAA

"The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2006),[2] governs the rights and responsibilities of the parties with respect to an arbitration agreement."  Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 342 (4th Cir. 2009).  "Under the [FAA], a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the subject matter of the federal action decided by arbitration, unless the party seeking arbitration is 'in default' of that right."  Microstrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001) (internal quotation marks omitted).  The FAA reflects "a liberal federal policy favoring arbitration agreements . . . ."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  "Pursuant to the liberal policy, any doubts concerning the scope of arbitrable issues should be resolved in favor of

---

[2]  Specifically, section 2 of the FAA provides that agreements to arbitrate found in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 3 of the FAA provides the means by which a party may seek a stay of pending litigation and a court order compelling arbitration.  See 9 U.S.C. § 3.  Under section 4 of the FAA, a party, in response to an opposing party's refusal to arbitrate under a contract, may "petition in any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed in the manner provided for in the agreement."  9 U.S.C. § 4.

arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). To that end, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (citation omitted). Thus, the court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id.

Despite these policies favoring arbitration, federal courts have the authority to evaluate the validity of arbitration agreements. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). "If a party challenges the validity under [9 U.S.C.] § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under [9 U.S.C.] § 4." See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. __, 130 S. Ct. 2772, 2778 (2010). Moreover, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract . . . unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46 (2006).

"A party can compel arbitration under the FAA if it establishes: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute that is enforceable under general principles of contract law; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of a party to arbitrate the dispute." Am. Gen.

6

Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005); Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991).

    2.    Contentions of the Parties regarding Applicability of the FAA

In this case, there is sufficient evidence establishing both the dispute between Plaintiffs and Defendant and the refusal by Plaintiffs to submit their claims to arbitration. (See ECF No. 61; ECF No. 74.) Defendant contends without opposition from Plaintiffs that the "interstate commerce" requirement is established through Plaintiffs' allegations and evidence that they transported corrugated packaging materials for Defendant through the states of South Carolina, North Carolina, Georgia, and Alabama. (ECF No. 61, ¶ 16; ECF No. 74-2.) Accordingly, the determination of whether Defendant can compel arbitration is contingent on the existence of a written agreement that includes an arbitration provision purporting to cover the dispute that is enforceable under general principles of contract law.

To satisfy this final requirement, Defendant contends that the 1997 Agreement is the written agreement that defined the business relationship of the parties and included an arbitration provision, which provision covers this dispute based on language stating that "[t]he parties agree to submit any dispute arising under this agreement to binding arbitration . . . ." (ECF No. 67-1, p. 10; ECF No. 67-4, ¶15.) Defendant further contends that applicability of the 1997 Agreement is evidenced by Plaintiffs' inclusion of allegations of Defendant's breach of the 1997 Agreement in the initial complaint filed in this case.[3] (See ECF No. 1-1, ¶¶ 9, 49, 52.) Moreover, Defendant argues that Plaintiffs departed from this position only as a response to the first motion to compel arbitration filed by Defendant. (See ECF No. 24.)

---

[3] Defendant also references an allegation by Plaintiffs in a separate lawsuit that they and Defendant were parties to the 1997 Agreement, and that a company not party to the 1997 Agreement tortiously interfered with their rights under it. (ECF No. 67-10, ¶¶ 15, 46-57, 59.)

In opposing Defendant's arguments about the 1997 Agreement, Plaintiffs simply argue that their evidence establishes that the 1997 Agreement did not govern any relationship involving Plaintiffs and Defendant.  (ECF No. 74, pp. 6-7, 9.)  In reply, Defendant asserts that Plaintiffs expressed a dispute with the validity of the 1997 Agreement (contract) as a whole and such "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."  (ECF No. 77, pp. 1-2 (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) ("We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").)  The court agrees with Defendant and, as a result, is required to grant its motion to compel arbitration pursuant to the FAA.[4]

3.    Dismissal of Plaintiff's Claims

Upon the granting of a motion to compel arbitration, the court must determine whether to stay or dismiss Plaintiffs' lawsuit.  See 9 U.S.C. §§ 3 & 4 (stating that when an arbitration agreement governed by the FAA covers claims that have been asserted in a lawsuit, the court having jurisdiction over the case must compel arbitration and either dismiss the action or stay further judicial proceedings until arbitration has been held).  Where all of the claims pled by a plaintiff are subject to an arbitration agreement, the court should dismiss the claims rather than merely stay further judicial proceedings.  See Choice Hotels Int'l v. BSR Tropicana Resort, 252 F.3d 707, 709-10 (4th Cir. 2001) ( "Notwithstanding the terms of § 3, however, dismissal is a

---

[4]  Plaintiffs also argue that Defendant has waived its alleged right to compel arbitration "[b]y waiting approximately seven months prior to filing its original Motion to Compel Arbitration, by engaging in extensive pretrial discovery on the merits of the claims and defenses, by filing a dispositive motion on the merits of the case, by mediating the case, and by requesting extensions and otherwise manifesting assent to pre-trial scheduling orders.  (ECF No. 74, p. 11.)  The court declines to address this issue finding that it is in the category of threshold issues for the arbitrator.  See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 ("the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'") (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25).

proper remedy when all of the issues presented in a lawsuit are arbitrable.").

Upon review of the terms of the contract at issue in this matter, the court finds that Plaintiffs' state law claims of breach of contract, unjust enrichment, civil conspiracy, and breach of the duty of good faith and fair dealing, are all subject to arbitration.  (ECF No. 67-4, ¶15 ("The parties agree to submit any dispute arising under this agreement to binding arbitration . . .").)  Moreover, Plaintiffs did not offer any arguments or authority as to why a stay would be more appropriate than dismissal of their claims under these circumstances.  Accordingly, the court dismisses Plaintiffs' claims in this matter without prejudice.

**C.    Defendant's Motion for Summary Judgment**

The court deems Defendant's motion for summary judgment to be moot after the dismissal of Plaintiff's claims pursuant to Defendant's motion to compel arbitration.

### III.    CONCLUSION

Upon careful consideration of the entire record, the court hereby **DENIES** the motion for oral argument of Plaintiffs, Fleetwood Transportation Corporation and Transportation Consultants, Inc. (ECF No. 90); **GRANTS** the motion to compel arbitration of Defendant Packaging Corporation of America and **DISMISSES** the case without prejudice.  (ECF No. 67.) Defendant's motion for summary judgment is deemed **MOOT**.  (ECF No. 70.)

**IT IS SO ORDERED**.

*J. Michelle Childs*

_____
J. MICHELLE CHILDS
UNITED STATES DISTRICT JUDGE

March 8, 2012
Greenville, South Carolina

9